Argued and submitted April 27, reversed and remanded for trial June 24, reconsideration denied September 25, petition for review denied November 17, 1987
(304 Or 405)

# STATE OF OREGON,
*Appellant,*

*v.*

# DEBRA JEAN ADAMS,
*Respondent.*

## (M-66704 (86-347); CA A42103)

738 P2d 988

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Steven L. Myers, Portland, argued the cause for respondent. With him on the brief was Birkland & Houze, Portland.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The state appeals, contending that the trial court erred in dismissing its theft complaint. *See* ORS 135.755.[1] We agree and reverse.

The facts are essentially uncontradicted. Defendant was suspected of shoplifting from a department store. Hikade, a store security guard, saw her in the store with a necktie in her hand, then saw her leave the store. The necktie was not found in the area where she had been observed. Hikade and Debaw, another store security guard, contacted her outside the store at about 1:40 p.m. They identified themselves as security guards and asked her to accompany them back to the store. She did so.

Hikade orally advised defendant of her *Miranda* rights and gave her a printed form which recited those rights. Defendant signed the form, which included a statement that she was willing to talk about Hikade's suspicions. After interrogating her, Hikade asked her for her bag. She gave it to Hikade, who found the necktie inside. Defendant explained that she was going to exchange or return it to the store that day. She then stated that she did not wish to talk further about the incident. Hikade honored her request. The interrogation took five to ten minutes. Hikade then wrote a report of the incident. At about 2:50 p.m., she telephoned the Washington County Sheriff. Later, Deputy Sheriff Woods arrived and took defendant into custody.

Defendant originally moved to suppress evidence "which was obtained from defendant" by Hikade, Debaw and Woods. Specifically, she relied on the argument "that said evidence was the fruit of an unlawful citizen's arrest" by Hikade and Debaw. *See* ORS 133.225.[2] The trial court found

---

[1] ORS 135.755 provides:

"The court may, either of its own motion or upon the application of the district attorney, and in furtherance of justice, order the proceedings to be dismissed. The reasons for the dismissal shall be set forth in the order, which shall be entered in the register."

[2] ORS 133.225(1) provides:

"A private person may arrest another person for any crime committed in the presence of the private person if the private person has probable cause to believe the arrested person committed the crime. A private person making such an arrest shall, without unnecessary delay, take the arrested person before a magistrate or deliver the arrested person to a peace officer."

that Hikade had probable cause to arrest defendant and that the subsequent five to ten minute interrogation was conducted in a reasonable manner. *See* ORS 131.655.[3] In her brief in this court, defendant concedes that the interrogation was reasonable in manner and length.

Defense counsel then argued to the trial court that, even if there was probable cause to detain defendant initially, her further detention, after the initial five to ten minute interrogation, was unreasonable and, therefore, *all* of the state's evidence should be suppressed. The trial court stated, in relevant part:

"It appears to me that the security guards for Frederick and Nelson are to be guided by two statutes. I think [ORS] 133.225 regarding citizen's arrests does apply to security guards, but they have the other statute, [ORS] 131.655, that in particular applies in shoplifting cases. The security guards are permitted, despite the requirement in a normal citizen's arrest to immediately or promptly notify the police or take the person arrested before a magistrate, they are permitted to detain and interrogate for a reasonable time in a reasonable manner. And they did that, for about 5 or 10 minutes. There's no question that up to that time, when the defendant made it clear she wasn't going to talk anymore, that the investigation was proper and nothing was wrong. But to let her sit around for at least an hour, while they did other things and completed their paperwork, in my opinion is unreasonable and improper and a violation of the statutory duty to promptly notify the police of the citizen's arrest. I think it's not a constitutional violation, however, so there's no requirement that the court suppress any evidence. I think it's serious enough to send a message to the people who are doing this that when you put somebody in custody it's not just like sweeping the floor or filling out another form. This is an important matter involving the rights of citizens. They don't do it that way. They should call the sheriff promptly, get the paperwork done while the sheriff is on the way. I don't think the paperwork is so

---

[3] ORS 131.655(1) provides:

"Notwithstanding any other provision of law, a peace officer, merchant or merchant's employe who has probable cause for believing that a person has committed theft of property of a store or other mercantile establishment may detain and interrogate the person in regard thereto in a reasonable manner and for a reasonable time."

*See Delp v. Zapp's Stores,* 238 Or 538, 395 P2d 137 (1964).

extensive that it reasonably takes an hour to do, even if they needed to get the paperwork done before the guard could make a decision on whether to incarcerate or cite in lieu.

> "*My decision is, then, that letting the defendant sit there for an hour is unreasonable, a violation of the statute, and under the circumstances the message should be sent to the people not to do that again, and you do that by suppressing the evidence of the two security officers. I don't think it's necessary to suppress the evidence of the police officer, the sheriff, once he got there, but of course as a practical matter you aren't going to have a case without the testimony of the people who actually witnessed the incident take place.*" (Emphasis supplied.)

The trial court dismissed the complaint, rather than simply suppressing the evidence. The state contends that the trial court erred.[4] It first argues that defendant's further detention, *after* the initial interrogation but before Hikade telephoned the sheriff, was not unreasonable, because it was necessary for Hikade to complete her report before Woods arrived, because Woods would have to assess the evidence against defendant before he could take her into custody. It further argues that the security guards acted reasonably toward defendant, honoring her request to terminate the interrogation and that she never asked to leave the security office, to have the sheriff called or to make any calls herself.

■ Reasonableness is judged in the light of the totality of the circumstances. The state presented no evidence that Hikade's report had to be completed before she could *contact* the sheriff; neither was there any evidence to support the state's argument that the sheriff would not, or could not, take custody of defendant unless Hikade's report was completed. The state having failed to show any necessity to delay doing what the statute clearly commands, we agree with the trial court's conclusion that the further detention of defendant for

---

[4] To the extent that the trial court's order can be read as suppressing the testimony of Deputy Woods, the state has appealed that ruling. ORS 138.060(3). Although it is not clear, the trial court apparently intended to deny defendant's motion to suppress the testimony of Woods. The court stated, in relevant part:

"I don't think it's necessary to suppress the evidence of the police officer, the sheriff, once he got there, * * *."

That ruling was correct.

about an hour before the sheriff was *contacted* was unreasonable. That does not end our inquiry, however.

■      The state next argues that, even if the further detention was unreasonable in duration, dismissal was not a permissible sanction. It argues that any violation was statutory, not constitutional, that the statute does not mandate, or even authorize, dismissal and that the trial court exceeded its authority in dismissing the complaint for the purpose of "sending a message" to security guards. The state also argues that the trial court correctly found that any statutory violation was by a store security guard acting entirely as a private citizen. We agree with the trial court that Hikade's action "was not state action, but was the act of a citizen." *See State v. Jensen,* 83 Or App 231, 730 P2d 1282 (1986), *rev den* 303 Or 74 (1987). The trial court also found that Hikade's statutory violation was not a violation of defendant's rights under either the state or federal constitutions. Again, we agree. The remaining issue is whether the statutory violation by the security guard in this case is an appropriate ground on which to dismiss. We conclude that it is not.

Dismissal is a drastic remedy, which is to be reserved for severe situations. In order to justify dismissal, the reason must be substantial. *See State v. Love,* 38 Or App 459, 462, 590 P2d 741, *rev den* 286 Or 303 (1979); *State v. Shepherd,* 21 Or App 52, 55, 533 P2d 353, *rev den* (1975); *State v. Williams,* 17 Or App 43, 48, 520 P2d 462 (1974). The trial court must state adequate reasons for the dismissal on the record, ORS 135.755, and the dismissal must further the interests of justice. *State v. Mock,* 80 Or App 365, 368, 722 P2d 42 (1986); *State v. Hansen,* 37 Or App 461, 464-65, 587 P2d 508 (1978).

The trial court stated that the reasons for the dismissal were the statutory violation by the security guard and to "send a message" to store security personnel by suppressing the evidence obtained by the two security officers. The statutory violation here was the act of a private citizen; it was not the result of any state action. Furthermore, there is no showing that any substantive or procedural right of defendant having any bearing on the prosecution of her case has been affected by what transpired here. On the other hand, dismissal frustrates the public's right to have the law enforced and must, therefore, be limited to the most severe situations. *State v.*

*Jones,* 18 Or App 343, 346, 525 P2d 194, *rev den* (1974). Although the delay in *contacting* the sheriff was unreasonable, we do not agree that the record here justifies frustrating the public's right to have the charge against defendant prosecuted. We conclude that the trial court erred in dismissing the state's complaint.

Because we reverse, we address that portion of the trial court's oral decision that purports to suppress "the evidence of the two security officers." The state contends that the security guards' testimony about their visual observations before defendant was detained, and about the results of Hikade's interrogation, should not have been suppressed. We agree.

■ The trial court found, and we agree, that defendant's state and federal constitutional rights had not been violated by the statutory violation. Suppression of evidence for violation of a statute usually occurs only when the violation also affects a constitutional right. *State v. Valdez,* 277 Or 621, 629, 561 P2d 1006 (1977); *State v. Mathis,* 24 Or App 53, 56-58, 544 P2d 170, *rev den* (1976). In this case, no one violated defendant's constitutional rights. Her Article I, section 9, and Fourth Amendment rights to be free from unreasonable seizure are not implicated, because the *state* was not responsible for her unreasonable detention. *State v. Jensen, supra,* 83 Or App at 233; *State v. Pickett,* 37 Or App 239, 243-44, 586 P2d 824 (1978).

Further, the testimony of the security guards was not obtained as a result of the statutory violation or by its exploitation. *See Wong Sun v. United States,* 371 US 471, 487-88, 83 S Ct 407, 9 L Ed 2d 441 (1963); *State v. Quinn,* 290 Or 383, 623 P2d 630 (1981); *State v. Snyder,* 72 Or App 359, 695 P2d 958, *rev den* 299 Or 251 (1985). To the contrary, the trial court stated that that initial investigation "was proper and nothing was wrong." Defendant does not challenge that conclusion. Evidence obtained *before* any statutory violation occurred should not have been suppressed. Moreover, there was no justification for the trial court's suppression of the security guard's testimony to "send a message" to store security personnel. We conclude that the trial court erred in suppressing the security guards' testimony.

Reversed and remanded for trial.