Argued and submitted September 30, 1993; resubmitted In Banc May 11, reversed and remanded July 20, petition for review denied October 4, 1994 (320 Or 271)

# STATE OF OREGON,
*Appellant,*

*v.*

# EVELYN E. HADSELL,
*Respondent.*

(90-1607-M; CA A77711)

878 P2d 444

Thomas H. Denney, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Robert W. Dewey argued the cause and filed the brief for respondent.

EDMONDS, J.

Riggs, J., dissenting.

## EDMONDS, J.

The state appeals after the trial court granted defendant's motion to dismiss with prejudice, pursuant to ORS 135.775 and Article I, section 10, of the Oregon Constitution, the citation charging her with driving while under the influence of intoxicants. We reverse.

Defendant was arrested for driving while under the influence of intoxicants (DUII) on October 23, 1990. On November 4, she entered a plea of not guilty, signed a waiver of a speedy trial, and requested a trial by jury. On November 27, the trial court set trial for June 13, 1991. On June 11, defendant moved to continue the trial date so that a substitution of counsel could be made. Defendant's motion was allowed, and the case was reset for trial on December 4, 1991. On July 22, 1991, defendant requested again that the trial be reset, and the matter was reset to November 7, 1991.

Defendant did not testify and presented no evidence during the trial on November 7. At the end of the trial, the court allowed her motion for a mistrial based on the ground that the prosecutor during closing argument had referred to her failure to produce evidence. On November 27, 1991, the trial court set the case for retrial on May 14, 1992. On May 8, 1992, it became apparent that there was not a judge available to hear the case on May 14 because of a crowded docket. The court continued the trial on its own motion to August 5, 1992. However, in late June, 1992, defendant moved to dismiss the charge, arguing that the charge should be dismissed in the furtherance of justice or, alternatively, that her right to a speedy trial had been violated under Article I, section 10, of the Oregon Constitution.[1] An omnibus hearing was scheduled for July 31, 1992, but was reset, at defendant's request, to October 30, 1992. Following that hearing, the trial court granted defendant's motion to dismiss.

---

[1] Defendant did not move for dismissal of the charge under ORS 135.747. It provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

In *State v. Emery*, 318 Or 460, 869 P2d 859 (1994), the Supreme Court held that a motion made under ORS 135.747 does not require a showing of prejudice.

■ We are required to affirm the trial court on non-constitutional grounds, if possible, before reaching the constitutional issue. *State v. Rodriguez*, 317 Or 27, 31, 854 P2d 399 (1993). It appears from the remarks of the trial court that it based its ruling on defendant's motion to dismiss in the furtherance of justice under ORS 135.755,[2] because of the length of time that had elapsed from the date of the first trial, because of defendant's claim that she was unable to procure necessary witnesses, because of its belief that evidence was unavailable to defendant because it had been destroyed, because of the belief that the case against defendant was weak and because defendant had incurred additional expense and inconvenience as the result of the mistrial.

■■ We review the trial court's decision for an abuse of discretion. "The discretion granted to trial courts by ORS 135.755 is not absolute. It is to be applied within the bounds of legal principles." *State v. Sharp*, 28 Or App 429, 432, 559 P2d 930 (1977). We have said that dismissal under the statute is reserved for severe situations because the dismissal of a charging instrument frustrates the public interest in having the prosecution of crimes occur in order to promote the protection of the public and the rehabilitation of offenders. *See State v. Sheperd*, 21 Or App 52, 55, 533 P2d 353 (1975). In that light, we turn to defendant's arguments as to why it is in the furtherance of justice to dismiss the charge.

■ Defendant points to the delay in bringing her to trial. From the date of the first scheduled trial, the length of the delay that is attributable to the state is between November 7, 1991, and August 5, 1992, or less than nine months. According to defendant, that delay has resulted in her inability to call witnesses because they have moved to California and are "unavailable." It is noteworthy that she did not call any witnesses at her first trial. On November 27, 1991, the trial court set the second trial for May 14, 1992. After the first trial, defendant says she considered changing her trial strategy. The evidence shows that the witnesses did not die or

---

[2] ORS 135.755 provides:

"The court may, either on its own motion or upon the application of the district attorney, and in furtherance of justice, order the proceedings to be dismissed. The reasons for the dismissal shall be set forth in the order, which shall be entered in the register."

disappear. Defendant first tried to contact them on May 8, 1992. As a result, she learned that one of them had been incarcerated in the Josephine County jail and recently released. In June, 1992, she discovered that the witness' probation had been transferred to California. Further contact with the witnesses indicated they did not wish to travel from California to testify on defendant's behalf. Although defendant concludes that the witnesses are unavailable, she does not explain why they cannot be summoned from California under the Uniform Act to Secure Attendance of Witnesses from Without a State in Criminal Proceedings (ORS 136.623 *et seq*) or why she waited until May of 1992 to contact them. Moreover, she does not assert that they are witnesses who are essential to her defense, nor does she demonstrate how their testimony would be helpful. Defendant's motion acknowledges that fact when it says "Defendant decided to *seriously consider* calling [the passengers in her car] as witnesses at the second trial." (Emphasis supplied.)

Her second argument is based on the nonexistence of a tape of a prior arrest that has been destroyed. Apparently, defendant desires to offer the tape into evidence in the second trial to show her performance of sobriety tests when her blood alcohol level was .09 percent in order to offer a comparison with her ability to perform the sobriety tests on this occasion. Purportedly, the evidence would discredit the .12 percent breath test result in this case. Assuming that such a comparison is admissible, defendant does not demonstrate why she couldn't call the arresting officer to give the same testimony, or why the officer's notes or alcohol interview report are not available from the earlier arrest.

The other circumstances argued by defendant and relied on by the trial court are that the case against defendant is weak and that defendant will incur additional legal expenses if tried again. The trial court said "even if we went to trial next week, there is some likelihood that this defendant would be found not guilty, or at least have a hung jury." Defendant's breathalyzer test result was .12 percent. The legal limit is .08 percent. ORS 813.010(1)(a). ORS 135.755 does not authorize a trial court to dismiss a charge because it perceives the state's case to be weak. Even in the light of a motion for a directed verdict of acquittal, the state would be

entitled to have the case go to the jury when there is evidence, after viewing it in the light most favorable to the state, that is sufficient to justify a rational factfinder's finding that the essential elements of the crime have been established beyond a reasonable doubt. *State v. Garcia*, 288 Or 413, 605 P2d 671 (1980). The trial court had no authority to preempt the state's right to put on its case because it believed that the state's case is weak.

■■ Moreover, while the delay may have inconvenienced defendant and caused her more expense, we disagree that those circumstances outweigh the public's interest to have the charge against defendant prosecuted. The trial court, noting that defendant had already spent more in legal fees than the maximum fine for a DUII conviction, and that she had been required to reappear in court on a number of times, opined that the state had

> "exacted as much out of this defendant through the process as would have occurred, if not more, had she been convicted at the first trial."

However, the defendant's decision to contest the charge and the consequences that result therefrom do not lessen the "public's right to enforce the traffic law * * *." *State v. Sharp, supra,* 28 Or App at 432. That principle is particularly applicable regarding a charge of driving while under the influence; an offense involving conduct that generally involves risk to the public of loss of life or serious injury. In the light of all the circumstances, we hold that the trial court abused its discretion when it dismissed the charges under ORS 135.755.

■ ■ We turn to defendant's constitutional argument under Article I, section 10. The factors to be considered in determining whether an accused has been deprived of the right to a speedy trial under Article I, section 10, are: length of the delay, the reason for the delay and the resulting prejudice to the accused. *State v. Mende,* 304 Or 18, 21, 741 P2d 496 (1987). The length of delay serves as a triggering mechanism if the delay is substantially greater than the average time to bring an accused to trial. Here, the delay between arrest and dismissal triggers an inquiry into the other factors. *See State v. Wirth,* 114 Or App 496, 835 P2d 952 (1992).

■     Beyond acting as a triggering factor, the length of delay is to be considered with the reasons for delay and the resulting prejudice, if any, to determine if defendant has been constitutionally deprived of a speedy trial under section 10. Both the accused and the state share responsibility for the delay in this case. The delay that occurs between November 7, 1991, and August 5, 1992, is attributable to the state's or the court's conduct. The remainder of the delay from the original June 13, 1991, trial date is attributable to defendant at least in part, because of her motions for continuance. Moreover, there is no indication that the state's actions were intentionally used as a vehicle for delay, or that the delay was designed to impair defendant's ability to defend herself. When the relative length of the delay, the reasons for it, and the fact that the delay was not intended to impair defendant's ability to defend are considered, they do not weigh heavily in defendant's favor. *See State v. Hacker*, 62 Or App 691, 695, 662 P2d 21 (1983).

■     The next factor to be considered is whether defendant was prejudiced by the delay. Generally, three types of prejudice have been identified as potential results of pretrial delay: (1) incarceration, (2) anxiety over the public accusation and (3) impairment of the defense. *State v. Ivory*, 278 Or 499, 507, 564 P2d 1039 (1977). Defendant had not been incarcerated during the pendency of this proceeding on this charge. She argues that she has been prejudiced because of the anxiety caused her by the public accusation of the charge. Most criminal prosecutions cause stress, discomfort and interference with a normal life. Although a delay of trial adds to anxiety, defendant's emotional reaction must be viewed in the light of the reasons for the delay, part of which is attributable to her. *See State v. Moylett*, 123 Or App 600, 606, 860 P2d 886 (1993), *rev den* 319 Or 150 (1994). In view of all of the circumstances, we are not persuaded that the anxiety and stress resulting from the delay in this case were so great as to create any cognizable prejudice to defendant beyond that suffered by the typical defendant involved in the criminal justice system or to constitute cause for dismissal. *See State v. Dykast*, 300 Or 368, 378, 712 P2d 79 (1985).

Defendant also argues that she has suffered actual prejudice to her ability to prepare a defense. She asserts that

she suffers from a fading memory about the events that led to the charge. However, she does not explain specifically how her ability to defend has been prejudiced.[3] Also, she argues that she was prejudiced by the loss of potentially favorable witnesses, *i.e.*, the passengers in her car on the night of the arrest. We have discussed previously the validity of that argument. Finally, she argues that her ability to defend is prejudiced by the loss of or destruction by the state of the tape of the prior arrest. Again, for the reasons previously discussed, we are not persuaded by that argument that she has demonstrated prejudice.

In summary, we have weighed all of the factors relevant to defendant's claim that she has been denied a speedy trial under section 10. Some of the delay has been caused by defendant's conduct, and her claims that she has suffered prejudice to her ability to defend against the charge as a result of the delay are tenuous. On balance, we hold that the part of the delay that arose from the mistrial and because of a crowded docket does not justify the drastic remedy of dismissal under the circumstances of this case. The trial court erred in granting defendant's motion to dismiss.

Reversed and remanded.

**RIGGS, J.,** dissenting.

Defendant waited over two years for a final disposition in her misdemeanor case. The majority now reverses the trial court's judgment of dismissal and remands the case for a new trial. At this point, defendant has waited over three and one-half years since her arrest. Because I believe that the trial court correctly decided that defendant had not been granted a speedy trial, I dissent.

---

[3] The only evidence of defendant's faded memory that we find in the record is the following exchange between defendant and her attorney during the omnibus hearing.

DEFENSE ATTORNEY: "How is your memory of the events that occurred when you were arrested by Trooper Taylor on October 20, 1990, today? How clear is your recollection?"

DEFENDANT: "Some of it real good and some not."

DEFENSE ATTORNEY: "Do you believe you've had any memory loss of what events occurred that night because of the passage of time?"

DEFENDANT: "Yes I do."

In analyzing defendant's state constitutional right to a speedy trial, the majority correctly states the three-factor test from *State v. Mende*, 304 Or 18, 741 P2d 496 (1987). However, the majority then applies that test incorrectly. An expansion of the facts set out by the majority would not benefit bench or bar; instead, I simply note that the Oregon Supreme Court has said:

> "[E]ach of the [*Mende*] factors involves primarily factual inquiries, so that the decision of the trial court granting a dismissal is entitled to great weight." *State v. Ivory*, 278 Or 499, 508 n 7, 564 P2d 1039 (1977).[1]

After examining the trial judge's analysis of those factors, I cannot say that the trial court made factual or legal errors. I, therefore, dissent.

---

[1] Although *State v. Mende, supra*, was decided after *State v. Ivory, supra*, the test in *Mende* is derived from the test in *Barker v. Wingo*, 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972), which was the subject of the quote from *State v. Ivory, supra*.